UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRIMAR SYSTEMS, INC.,

     Plaintiff,

                                            Case No. 01-74081
-vs-                                     Hon: AVERN COHN

POWERDSINE, LIMITED,

     Defendant,

_____

CHRIMAR SYSTEMS, INC.,

     Plaintiff,

                                            Case No. 06-13936
-vs-                                     Hon: AVERN COHN

FOUNDRY NETWORKS, INC.,

     Defendant,

_____

CHRIMAR SYSTEMS, INC.,

     Plaintiff,

                                            Case No. 06-13937
-vs-                                     Hon: AVERN COHN

D-LINK SYSTEMS, INC.,

     Defendant.

_____/

## MEMORANDUM ON CLAIM CONSTRUCTION[1]

---

[1] This Memorandum accompanies the Markman Order filed July 10, 2008.

I.  Introduction

A.

This is a patent case.  The patent-in-suit, owned by plaintiff, ChriMar Systems, Inc. (ChriMar), is U.S. Patent No. 5,406,260 (the '260 Patent).  It covers a Network Security System For Detecting Removal of Electronic Equipment.  The defendants are PowerDsine, Limited (PowerDsine); Foundry Networks, Inc. (Foundry) and D-Link Systems, Inc. (D-Link) (collectively defendants).  PowerDsine and D-Link are each accused of infringing claims 14, 16 and 17 of the '260 Patent; Foundry is accused of infringing claims 14 and 17 of the '260 Patent.

Claim 1 of the '260 Patent is the subject of a prior case, Chrimar Sys. Inc. v. Cisco Sys. Inc., No. 01-71113.  A copy of claim 1 is attached as Exhibit A.  The ambiguous words and phrases in claim 1 were interpreted in the Memorandum And Order On Claim Construction in the prior case (Dkt. 39), filed August 8, 2002[2] (Claim Construction Memorandum).[3]  A reported decision in the prior case generally describes the background and preferred embodiment of the '260 patent.  See Chrimar Sys., Inc. v. Cisco Sys., Inc., 318 F. Supp. 2d 476 (E.D. Mich. 2004).

B.

As is the Court's practice, ChriMar was required to designate a paradigm claim and accused device (Dkt. 8).  Defendants then designated the ambiguous words and phrases

---

[2]  The docket references are to Case No. 06-13936.

[3]  As noted in Inverness Medical Switzerland GmbH v. Princeton Biomeditech Corp., 309 F.3d 1365, 1371 (Fed. Cir. 2002), "[a] claim term used in multiple claims should be construed consistently." (citations omitted).

in the paradigm claim, independent claim 14, and dependant claims 16 and 17, which they did (Dkt. 25). A copy of claims 14, 16 and 17 are attached as Exhibit B with the ambiguous words and phrases identified. ChriMar responded with its interpretation and defendants replied. Mark A. Lemley was the appointed special master to conduct a <u>Markman</u> proceeding (Dkt. 30). The special master filed a report and recommendation (R&R) on April 1, 2008 (Dkt. 53).

The parties have filed objections, responses and replies. Now before the Court are the parties' objections to the R&R.

## II. Analysis

### A.

Attached as Exhibit C is a claim chart reflecting each of the identified ambiguous words and phrases, ChriMar's initial interpretations, defendants' initial interpretations, the special master's interpretations and the Court's interpretations.[4] The parties in their objections proffered different interpretations for some of the ambiguous words and phrases. These different interpretations are also described in Exhibit C. The special master did not have the opportunity to discuss the new interpretations. Claim interpretation ought not be a work in progress.

### B.

There are no objections to the special master's interpretation of

Term 8: "physically connected"

Term 9: "sensing"

Term 10: "said DC current signal in each of said current loops"

---

[4] As explained below, the Court has amended the claim chart attached to the <u>Markman</u> Order with respect to the interpretation of the phrase "selectively tapping . . ."

Term 11: "a change in current flow"

Term 13: 10 BaseT wiring"

Accordingly, these words and phrases are interpreted as recommended by the special master.

## C.

### 1.

ChriMar objects to the special master's interpretation of

Term 2: "data communication lines"

Term 3: "selecting respective pairs"

Term 4: "current loop"

Term 5: "supplying"

## D.

The defendants object to the special master's interpretation of

Term 1: "detecting unauthorized disconnection"

Term 2: "data communication lines"

Term 6: "low"

Term 7: "DC current signal"

Term 12: "selectively tapping . . ."

## E.

The Court's resolution of the objections follow.

## III.

### A. Term 1: "detecting unauthorized disconnection"

The special master recommends that "detecting unauthorized disconnection" be considered part of the preamble and therefore did not interpret the phrase because it is not

limiting. ChriMar agrees. Defendants disagree, arguing that claim 14 is limited to a method which "indicat[es] a theft upon physical disconnection of the data communication lines;" otherwise, they argue the phrase is indefinite.

This disagreement is a reprise of the argument over the phrase "a security system," in the preamble to claim 1 in the prior case. There, the Court found the phrase "security system" was part of the preamble and required no interpretation. The special master's reasons for finding no need for interpretation, and the Court's reasons in the prior case adequately explain why the phrase is not limiting. Computer Docking Station Corp. v. Dell, Inc., 519 F.3d 1366 (Fed. Cir. 2008), cited by defendants, does not call for a contrary result. As stated in ChriMar's Response To Defendant's Joint Objections [etc] (Dkt. 62), p. 7:

> Computer Docking does not alter the law with respect to whether or not a preamble is limiting. The primary case relied upon in the Computer Docking decision is On Demand Mach. Corp. v. Ingram Indus., 442 F.3d 1331, 1343 (Fed. Cir. 2006). Computer Docking thus relies on cases from at least 2006 – before the Markman briefing in this case. The court stated that, "In considering whether a preamble limits a claim, the preamble is analyzed to ascertain whether it states a necessary and defining aspect of the invention, or is simply an introduction to the field of the claim." Computer Docking, 519 F.3d at 1375. The Special Master cited consistent law at 8 of the Report stating, "The fact that a preamble is used only to 'state a purpose or intended use for the invention' is strong evidence that the preamble is not limiting." Rowe v. Dror, 112 F.3d 473, 478 (Fed. Cir. 1997).

The phrase "detecting unauthorized use" describes the intended use of the invention. As pointed out by the special master, the claim without the phrase defines an operable invention. See R&R at p. 8. The special master's recommendation will be followed.[5]

---

[5] The Court stated at oral argument that this finding might be open to reconsideration once the exact nature of the accused devices was known, and

B.  Term 2:  "data communication lines"

Both parties object to the special master's interpretation of "data communication lines."  This phrase also appears in claim 1.  In the prior case, its meaning was not in issue. The Court previously said:

> It is undisputed that no data packets are ever actually transmitted over the wires creating the current loop. . .

ChriMar, 318 F. Supp. 2d at 511 (emphasis omitted).

This finding has engendered a dispute over whether or not ChriMar is collaterally estopped from now arguing a different interpretation.  The special master said collateral estoppel applied over ChriMar's strong objections.  There is no need to decide whether collateral estoppel applies.  The simple reason is that the interpretations from claim 1 carry over to claim 14.  There is no need to start anew.  As the special master put it:

> the lines do not have to be used for actually carrying data <u>at any given time</u>, but they must be lines of the type that are generally used to carry data.

R&R at p. 17 (emphasis added).

The correct interpretation of the phrase for the reasons stated by the special master is:

> communication lines typically used for carrying data

C.  Term 3:  "selecting respective pairs"

ChriMar, in objecting to the special master's interpretation of "selecting respective pairs," rather than defending the interpretation it initially proffered, has changed its interpretation to

> choosing distinct and separate pairs

---

ChriMar's case for infringement was defined.

The special master, in recommending a slightly different word order than that of defendants' interpretation, said:

> at the hearing both plaintiffs [sic] and defendants agreed that the phrase "selecting respective pairs" did not limit the invention to methods that use one and only one pair per piece of equipment. Both parties also agree that the term "respective" pairs means that there must be pairs uniquely identified with each piece of equipment; that is, a particular pair must correspond to only one piece of equipment

R&R at p. 17-18.

The special master went on to say:

> The act of selecting a pair of data communication to associate with a piece of monitored equipment does not necessarily imply the use of that pair, but rather the choice of which pair will be associated with which equipment

R&R at p. 18.

The correct interpretation of the phrase "reflecting respective pairs," for the reasons stated by the special master is:

> choosing a pair of data communication lines for each associated piece of monitored equipment that is different than any of the pairs associated with other pieces of monitored equipment

At oral argument, there was apparent agreement that this interpretation did not preclude a second set of redundant links for a piece of monitored equipment.

### D. Term 4: "current loop"

Again ChriMar, in objecting to the special master's interpretation of "current loop," rather than defending the interpretation it initially proffered, has changed its interpretation to:

> A round-trip path through a selected pair or selected pairs of data communication lines and an associated piece of monitored equipment

The phrase "current loop means" in claim 1 was interpreted in the prior case not as

a means plus function limitation. Rather, the Court said in the prior case:

> <u>Current loop means</u> references current loops associated with
> each of the different pieces of monitored equipment, each loop
> having a pair of data communication lines. These lines, as
> described, connect the electronic equipment which is being
> monitored to the network through existing internal circuitry.
> ChriMar has correctly interpreted <u>current loop means</u>.
>
> The jury will be instructed to read <u>current loop means</u> as
> follows: "multiple current loops with each loop associated with
> a corresponding piece of electrical equipment. Each of the
> current loops is a pair of data communication lines that connect
> the corresponding piece of electronic equipment to a network
> through existing internal circuitry."

Claim Construction Memorandum at p. 13.

Defendants correctly point out in Defendants' Joint Response In Opposition To

ChriMar's Objections [etc] (Dkt. 63) (Joint Response) at p. 18:

> . . . it is that selection of pairs of wires that creates the current
> loop, as evidenced by the description of what is a current loop
> in the patent's specification. <u>See</u> Ex. A, '260 Patent at 8:2-24;
> 3:45-52; 4:20-24. The Special Master fully appreciated the
> import of this critical aspect of the intrinsic evidence concerning
> what constitutes a current loop, and even stated "[t]he current
> flows down one wire, into the piece of equipment, where the
> circuit is completed and the current is sent back up a second
> wire." <u>See</u> Special Master's R&R at 19 (citing '260 patent col.
> 3, ln. 48).

The correct interpretation of the phrase "current loop," for the reasons stated by the

special master is:

> a round trip path through a selected pair of data
> communication lines and an associated piece of equipment

At oral argument, the Court stated that plaintiff, if dissatisfied with this interpretation

could move for reconsideration, a decision on which would abide exact knowledge of the

nature of the accused devices. ChriMar's interpretation which allows for a single loop

where there are two (2) pairs of communication lines for a piece of monitored equipment is illustrated on Exhibit D attached.

### E. Term 5: "supplying"

ChriMar, in objecting to the special master's interpretation of "supplying," rather than defending the interpretation it initially proffered, has now changed its interpretation to:

"providing"[6]

As stated in the Joint Response at p. 19:

> As the Special Master found, "[t]he term supplying has a straightforward meaning, and it is <u>well captured</u> in defendants' construction: 'causing a DC current to flow.'" <u>See</u> Special Master's R&R at 20 (emphasis added). The Special Master was correct and should be sustained.

The correct interpretation of the phrase "supplying," for the reasons stated by the special master is:

causing a DC current to flow

### F. Term 6: "low"

The special master recommends "low" be interpreted to call for

> a DC current that is sufficiently low that it does not interfere with or adversely affect the operation of the electric equipment or computer network.

This recommendation calls for the same interpretation given the word "low" as it appears in Claim 1. <u>See</u> Claim Construction Memorandum at p. 14.

Notwithstanding, defendants object and argue for a numerical limitation "on one milliamp or less," citing language from the specification, col. 3: ll. 56-60:

> The DC power signal has a low current preferably on the order

---

[6] "Supply" and "provide" are synonymous. *Roget's International Thesaurus*, 659.7 (4th ed. 1977).

of magnitude of less than 1 milliamp. . .

In support, defendants cite <u>Haliburton Energy Servs., Inc. v. M-I, LLC</u>, 514 F.3d 1244, 1255

(Fed. Cir. 2008), which held that where a subjective term is defined within the specification

it should be given the defined meaning.

> The specification emphatically does not limit the invention to
> current of one milliamp or less.  Rather, it says that the "low"
> current is "<u>preferably on the order of magnitude</u> of less than
> one milliamp."

R&R at p. 21.

One of the cardinal sins of claim interpretation is for a court to be seduced by the

language of the preferred embodiment.  There is no good reason for the Court to give a

different interpretation to "low" on Claim 14 than it gave for it in Claim 1.

The special master's interpretation for the word "low, " set forth above, is correct for

the reasons stated by the special master.

## G.  Term 7:  "DC current signal"

In like fashion, defendants, in objecting to the special master's interpretation of "DC

current signal," rather than defending the interpretation they initially proffered, have

changed the interpretation to:

> a continuous flow of current in only one direction, which may
> vary in positive magnitude.

The special master, in rejecting defendants' interpretation, was concerned that "the

term 'continuous' might be read to suggest that any signal that varied in strength could not

be a DC current."  R&R at p. 25.

The correct interpretation of the phrase "DC current signal," for the reasons stated

by the special master is:

a flow of current in only one direction

### H.  Term 12: "selectively tapping . . ."

Defendants, in objecting to the special master's interpretation of "selectively tapping," rather than defending the interpretation they initially proffered, have now changed their interpretation to:

> creating electrical conductivity to the selected pair of each associated device

They state that the claim language specifically references "said associated pieces of equipment."

ChriMar supports the special master's interpretation to enable it to argue against a situation where there is only one selected pair for each associated piece of monitored equipment.  Defendant's Joint Reply (Dkt. 66) at p. 9 correctly states:

> . . . Defendants' proposed minor edit is dictated by the intrinsic evidence, which reflects that each current loop described in the '260 Patent is provided by selected pairs of wires that are associated with individual pieces of monitored equipment, in which the loops are formed with pairs of transmit wires or pairs of receive wires, but not a pairing of both a transmit and a receive wires. See Ex. A at 3:45-52 ("Each pair of transmit wires 44 and 46 along with isolation transformer 52 thereby form a current loop 50 through the personal computer 12," and "the same approach could be implemented with the pairs of receive wires without departing from the scope of the invention").

The correct interpretation of the phrase "selectively tapping," for the reasons stated by the special master, and as above, is:

> creating electrical conductivity to each selected pair of each piece of associated equipment[7]

---

[7]  The Court's construction reflected in the claim chart attached to the Markman Order uses the phrase ". . . of each associated device."  The Court has amended the interpretation, as noted above, to say ". . . of each piece of associated equipment."  The

## III.  Conclusion

Much of the benefits of the reference to the special master have been dissipated by the parties' changes in interpretation from those initially stated.  Additional difficulties have been encountered in dealing with the objections by their tendentiousness.  Clearly, ChriMar and the defendants are each keeping a weather eye out for the accused devices hoping to obtain an advantage in the resolution of the summary judgment motions inevitably following the entry of the <u>Markman</u> Order.  Be all that as it may, the case can now go forward.

The interpretations finalized by this Memorandum are obviously tentative and subject to revision should subsequent filings require such.


Dated:  July 30, 2008                           s/Avern Cohn
                                                AVERN COHN
                                                UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, July 30, 2008, by electronic and/or ordinary mail.


                                                s/Julie Owens
                                                Case Manager, (313) 234-5160

---

claim chart attached as Exhibit C reflects this change.