UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CHRIMAR SYSTEMS, INC., d/b/a CMS TECHNOLOGIES, INC., a Michigan corporation,<br><br>                      Plaintiff,<br>   v.<br>POWERDSINE LTD., an Israel corporation, and POWERDSINE CORP., a New York corporation,<br><br>                      Defendants.<br><br>Defendants. | Civil Action No. 01-74081<br>Honorable Avern Cohn |
| CHRIMAR SYSTEMS, INC. d/b/a CMS TECHNOLOGIES, INC., a Michigan corporation,<br><br>                      Plaintiff,<br>   v.<br><br>FOUNDRY NETWORKS, INC., a California corporation,<br><br>                      Defendant. | Civil Action No. 06-13936<br>Honorable Avern Cohn |
| CHRIMAR SYSTEMS, INC. d/b/a CMS TECHNOLOGIES, INC., a Michigan corporation,<br><br>                      Plaintiff,<br>   v.<br><br>D-LINK SYSTEMS, INC., a California corporation,<br><br>                      Defendant. | Civil Action No. 06-13937<br>Honorable Avern Cohn |

**REPORT AND RECOMMENDATION OF SPECIAL MASTER CONCERNING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OF CLAIMS 16 AND 17 OF THE '260 PATENT DUE TO COLLATERAL ESTOPPEL**

**TABLE OF CONTENTS**

I.   BACKGROUND ........................................................................................................... 1

II.  DISCUSSION .............................................................................................................. 3

   A.  Finality and Opportunity to Litigate ................................................................... 3

   B.  Necessary to the Outcome .................................................................................. 5

   C.  Application Beyond Standard 10BaseT Products ............................................... 8

III. CONCLUSION ............................................................................................................ 9

# TABLE OF AUTHORITIES

**Cases**

*Arab African Int'l Bank v. Epstein*
    958 F.2d 532 (3d Cir. 1992) .................................................................................. 5
*Baker Elec. Co-op v. Chaske*
    28 F.3d 1466 (8th Cir. 1994) .................................................................................. 5
*Cardinal Chemical Co. v. Morton Int'l*
    508 U.S. 83 (1993) ................................................................................................ 7
*ChriMar Sys., Inc. v. Cisco Sys., Inc.*
    318 F. Supp. 2d 476 (E.D. Mich. 2004) ................................................. 1, 3, 6, 7, 8
*Dana v. E.S. Originals, Inc.*
    342 F.3d 1320 (Fed. Cir. 2003) ............................................................................. 3
*Employees Own Federal Credit Union v. City of Defiance, Ohio*
    752 F.2d 243 (6th Cir. 1985) ................................................................................. 4
*In re Freeman*
    30 F.3d 1459 (Fed. Cir. 1994) ............................................................................... 3
*Mendenhall v. Barber-Greene Co.*
    26 F.3d 1573 (Fed. Cir. 1994) ............................................................................... 7
*Micro Intern. Ltd. v. Beyond Innovation Technology Co., Ltd.*
    521 F.3d 1351 (Fed. Cir. 2008) ............................................................................. 2
*Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*
    253 F. 3d 900 (6th Cir. 2001) ......................................................................... 4, 5, 7
*Peabody Coal Co. v. Spese*
    117 F.3d 1001 (7th Cir. 1997) (*en banc*) ............................................................. 5
*Ritter v. Mount St. Mary's College*
    814 F.2d 986 (4th Cir. 1987) ................................................................................. 5
*Turney v. O'Toole*
    898 F.2d 1470 (10th Cir. 1990) ............................................................................. 5
*U.S. v. Cinemark USA, Inc.*
    348 F.3d 569 (6th Cir. 2003) ................................................................................. 3

**Statutes**

35 U.S.C. §112(6). .................................................................................................... 6

## I. BACKGROUND

Defendant PowerDSine brought this motion for summary judgment of noninfringement of claims 16 based on the application of the doctrine of collateral estoppel. Defendants Foundry Networks and D-Link Systems joined that motion and filed a related motion as to claim 17. Those motions raise the same issues and are considered together for purposes of this Report and Recommendation. Defendants argue that a judgment of noninfringement in a prior litigation, *ChriMar Sys., Inc. v. Cisco Sys., Inc.*, 318 F. Supp. 2d 476 (E.D. Mich. 2004) ("the *Cisco* litigation") involving the same patent at issue here ("the '260 patent") should bind the plaintiff in this litigation.

The '260 patent is directed to a system of passing low amounts of power over Ethernet cabling, detecting a disconnection of a device when the power flow is interrupted. Ethernet cables include four pairs of wires, two of which are used for carrying data and two of which are "spare pairs" that do not carry data. The court in the *Cisco* litigation determined that the phrase "data communication lines" in claim 1 excluded spare-pare wires over which only power and no data was passed. The court in *Cisco* found that a product that did not send any data over the specific wires in the Ethernet cable over which it sent power could not infringe claim 1 of the '260 patent because such a product did not meet the limitation of "current loop means" because it did not pass power over "data communication lines." *Cisco*, 318 F. Supp. 2d at 511.

In the present case, it is undisputed that certain of defendants' accused products, like the products at issue in the *Cisco* litigation, send power only over those wires in an Ethernet cable that are not used to transport data. Thus defendants argue that the doctrine of collateral estoppel bars plaintiff from asserting infringement of claims containing the "data communication lines" limitation against products that send data and power only over the spare pair wires within an Ethernet cable.

While the *Cisco* court did not provide an explicit affirmative interpretation of the term "data communication lines" in that litigation, the court did effectively construe the term by evaluating its meaning in the context of its infringement analysis of Cisco's Power Patch panels, and

1

assigned it its proper scope.  *See*, e.g.*, 02 Micro Intern. Ltd. v. Beyond Innovation Technology Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) (holding that "claim construction is not an obligatory exercise in redundancy," but that, "[w]hen the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it.") (cites and quotes omitted).  This is exactly what the Court did in the *Cisco* case. The court held that a wire in an Ethernet cable that was only used for the purpose of transporting power, not data, was outside of the proper scope of the claim term, "data communication lines."

During claim construction in the present case, my Report and Recommendation suggested that collateral estoppel might prevent plaintiff from opposing the claim construction that was adopted in the *Cisco* litigation, whereby the scope of the limitation "data communication lines" was interpreted to exclude those wires in Ethernet cables that are not used to transmit data.  I further recommended that the term "data communication lines" be construed to mean "communication lines typically used for carrying data."  Report and Recommendation of Special Master at 13-17.  This construction drew from the noninfringement holding in the *Cisco* litigation, but made it clear that whether a line was a "data communication line" depended on whether the line was one that was typically used for carrying data, not whether it was actually carrying data at any particular time.

The district court confirmed my construction.  Memorandum on Claim Construction (accompanying *Markman* Order), Case Nos. 01-74081, 06-13936, 06-13937, at 6.  In doing so, the court did not apply the doctrine of collateral estoppel.  Instead, it concluded that the logic of the noninfringement analysis in the underlying *Cisco* litigation would have force in the analogous circumstance in this case, but did not explicitly foreclose contrary argument.

Defendants do not in this motion move for summary judgment of noninfringement per se.  Instead, they move only for application of the doctrine of collateral estoppel with respect to the term "data communication lines."  The broader question of whether the '260 patent can be infringed by a product that carries power over lines that are not used for carrying data – the question *Cisco* answered "no" – is not yet before me.

2

## II. DISCUSSION

Collateral estoppel in patent cases is a procedural determination governed by law of the regional circuit. *See Dana* v. *E.S. Originals, Inc.,* 342 F.3d 1320, 1323 (Fed. Cir. 2003). Thus, the district court must follow Sixth Circuit precedent on collateral estoppel. In the Sixth Circuit, application of collateral estoppel requires that the precise issue be raised and actually litigated; that the determination must have been necessary to the outcome; that the proceeding resulted in a final judgment on the merits; and that the party against whom the estoppel is sought had a full and fair opportunity to litigate the issue. *U.S. v. Cinemark USA, Inc.*, 348 F.3d 569, 583 (6th Cir. 2003).[1]

### A. Finality and Opportunity to Litigate

The prior ruling in the *Cisco* litigation was a final order for this purpose of this prong of the analysis. As an initial matter, the fact that the summary judgment in the *Cisco* litigation was only "partial" does not preclude application of collateral estoppel. *See Dana,* 342 F.3d at 1323. All that is necessary in this regard is that the issue that was the subject of the partial summary judgment be finally resolved, and that the parties have the opportunity to fully litigate that issue. *See In re Freeman*, 30 F.3d 1459, 1467 (Fed. Cir. 1994). Because a finding of noninfringement is an ultimate issue in any patent dispute, the fact that other claims might have remained in the *Cisco* dispute following the partial summary judgment does not derogate from the finality of judgment on that issue. And the parties clearly thought the issue of infringement important in the *Cisco* litigation, and fully and fairly – indeed, vigorously – litigated the question there. *See Cisco*, 318 F. Supp. 2d at 489-90 (explaining that the special master was appointed due to the complexity of the issues and the volume of the papers, and noting that the parties produced extensive papers explaining the technology, and that the special master asked detailed questions).

---

[1] The parties dispute whether a four-factor or a five-factor test applies; Sixth Circuit decisions have used both formulations. The difference is the inclusion of the requirement that the party against whom the estoppel is sought have been a party (or in privity with a party) to the prior litigation as was the case in *Verizon North Inc. v. Strand*, 367 F.3d 577, 583 (6th Cir. 2004). I do not find it necessary to resolve the difference, because the presence of that requirement is not in dispute in this case.

The subsequent settlement of a dispute after the entry of a dispositive order does not defeat finality. *See, e.g., Employees Own Federal Credit Union v. City of Defiance, Ohio*, 752 F.2d 243, 245 (6th Cir. 1985) (holding that voluntary dismissal after dispositive ruling does not avoid preclusive effect of that ruling.). This is particularly so where the losing party has the incentive to appeal the final determination. *Cf. Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F. 3d 900, 909-910 (6th Cir. 2001) (lack of incentive to pursue an appeal as to an alternative ground for a decision cut against finding estoppel). If settlement revoked the preclusive impact of an earlier judgment, this would have the effect of allowing losing parties to pay money for the option to not have the doctrine of collateral estoppel applied to them. The purpose of the doctrine – to improve the procedural efficiency of the legal system and avoid repetitive litigation of decided issues – counsels against plaintiff's argument.

ChriMar argued at the hearing held to address the collateral estoppel issues that the third preamble clause of the *Cisco* settlement agreement precludes application of collateral estoppel. But in fact it does no such thing. That clause merely provides that "WHEREAS, Neither the negotiation, execution, nor performance of this License Agreement, nor anything contained herein, constitutes an admission of liability, infringement, or validity of the Licensed Patent on the part of Cisco." ChriMar-Cisco Settlement Agreement.[2] This standard term merely provides that <u>Cisco</u> is not admitting liability in the settlement. It doesn't say anything at all about ChriMar's admissions. In any event, the settlement in the *Cisco* litigation came in the form of a dismissal with prejudice, not a consent judgment. *ChriMar Sys. Inc. v. Cisco Sys., Inc.*, Case No. 2:01-cv-71113, Agreed Order of Dismissal dated September 15, 2005. Thus there was nothing about the order that manifested an interest in preserving the litigants rights to relitigate decided issues. Indeed, the order itself was not conditioned on settlement, and there is nothing to indicate that Judge Cohn even had the settlement agreement before him when he dismissed the *Cisco*

---

[2] The full Settlement Agreement is confidential. ChriMar sought to introduce it at the hearing; Power DSine objected. At my request, after the hearing defendants sought and received the permission of Cisco to reproduce the relevant language from the Settlement Agreement in this Report and Recommendation, without compromising the confidentiality of the remainder of the agreement.

4

action pursuant to settlement. Thus, even if the settlement agreement indicated an intent to waive application of collateral estoppel – which it does not – the private intent of the parties does not prevent application of the doctrine.

### B.  Necessary to the Outcome

Whether the *Cisco* ruling on the term "data communication lines" was necessary to the outcome in that litigation is a more difficult question. Judge Cohn found that claim 1 was not infringed because Cisco's Power Patch panels lacked both the "current loop means" (because of the absence of "data communication lines") and "detector means" limitations. In other words, the court's holding that the Power Patch panels did not send data over data communication lines was an alternative holding; its ultimate judgment that claim 1 was not infringed was equally supported by Judge Cohn's ruling that the Power Patch panels lacked a detector means. According to the Restatement (Second) of Judgments, collateral estoppel does not attach when two alternative grounds for a ruling are stated, each of which is sufficient to sustain the outcome, because neither such basis is necessary to the outcome. "If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone." Restatement (Second) of Judgments § 27. This approach to determining whether an issue was necessary to an outcome has been adopted in many circuits. *See Arab African Int'l Bank v. Epstein,* 958 F.2d 532, 535 (3d Cir. 1992); *Ritter v. Mount St. Mary's College,* 814 F.2d 986, 993-94 (4th Cir. 1987); *Baker Elec. Co-op v. Chaske,* 28 F.3d 1466, 1475-76 (8th Cir. 1994); *Turney v. O'Toole,* 898 F.2d 1470, 1472 n.1 (10th Cir. 1990); *Peabody Coal Co. v. Spese,* 117 F.3d 1001, 1008 (7th Cir. 1997) (*en banc*). But the Sixth Circuit is not among them.

Under Sixth Circuit law, the question of whether an alternative ground for a judgment can be necessary for the outcome remains an open question. In *Eliadis,* 253 F.3d at 909-910, the Sixth Circuit held that one of two alternative grounds may be necessary for estoppel purposes when the one necessary ground was the primary basis for the decision and the other basis was merely

5

secondary.  "We do hold, however, that where, as in *Coach's Corner,* one ground for the decision is clearly primary and the other only secondary, the secondary ground is not 'necessary to the outcome' for the purposes of issue preclusion."  *Id.* at 910.  In that case, the Sixth Circuit distinguished the situation where a "secondary" holding was, "[an] oral ruling… only a two paragraph conclusory statement… which was far overshadowed by the balance of its three-page discussion," of the primary holding.  *Id*. *Eliadis* did not resolve the question of whether two alternative holdings that are roughly equal in importance can have collateral estoppel effect, *id*., and we are not aware of any Sixth Circuit case resolving the issue.

*Eliadis* does not control the present case.  There were two independent and co-equal grounds for the *Cisco* court to find noninfringement of claim one of the '260 patent.  The first, and the one at issue here, was based on the absence of the "data communication lines" limitation.  The second was the absence of another limitation, "detector means," from the product accused in the Cisco case.  As an initial matter, both independent grounds were fully considered by the Cisco court.  "Current loop means" received a little over one page of treatment by the *Cisco* Court, while "detector means" received approximately four pages.  *Cisco*, 318 F. Supp. 2d at 510-515.  This discrepancy is accounted for by the fact that ChriMar had identified three separate structures as equivalents for purposes of 35 U.S.C. §112(6).  *Id*. at 512.  Thus while either ground would have been sufficient for collateral estoppel to attach had it been the only ground, neither can be considered the kind of afterthought that motivated the holding of *Eliadis*.

Defendants argue that because the "data communication lines" limitation appeared in other claims that did not include the "detector means" limitation, the "data communication lines" holding actually *was* necessary to the outcome.  PowerDSine's Motion for Partial Summary Judgment of Noninfringement of Claim 16 of U.S. Patent No. 5,406,260 Based on the Doctrine of Collateral Estoppel at 14.  This reasoning is incorrect.  The only issue actually before the *Cisco* court was infringement of claim 1, which contained both limitations, each of which was

6

held to be absent from the accused product. The absence of either limitation was adequate to reach a finding of noninfringement of the only claim at issue in the *Cisco* litigation.[3]

Thus I am unable to determine the issue of whether the estoppel should apply without reaching the open question of whether, under Sixth Circuit law, either of two alternative and sufficient grounds for reaching a result can be collaterally binding.

My view is that the Sixth Circuit would likely follow the modern rule as articulated in the Restatement (Second) of Judgments and adopted by at least the Third, Fourth, Seventh, Eighth, and Tenth circuits. *Eliadis*, 253 F.3d at 909. The reasoning in *Eliadis* is consistent with the view that while the modern rule is probably the right one, that case did not present the court with two truly alternative grounds for reaching its decision, and so did not come within the Restatement rule. For this reason I recommend the Court find that collateral estoppel does not bar plaintiff from asserting infringement against defendants' products based on the noninfringement finding in the *Cisco* litigation. Based upon the guidance from the Sixth Circuit thus far, this appears to be the rule that would likely be applied by that court. I note that defendants should be free to bring a motion for summary judgment on the same grounds on which the Power Patch Panels were found not to infringe in the *Cisco* litigation, but based on the claim construction order in *this* case rather than on the doctrine of collateral estoppel. *See* Memorandum on Claim Construction (accompanying *Markman* Order), Case Nos. 01-74081, 06-13936, 06-13937, at 6.

---

[3] By contrast, plaintiff's argument that the *Cisco* court's finding of invalidity as to claim 1 of the '260 patent itself created an alternate basis sufficient to defeat collateral estoppel is wrong. The Supreme Court has held that a finding of noninfringement does not defeat subject matter jurisdiction over a declaratory judgment action for invalidity. *See Cardinal Chemical Co. v. Morton Int'l*, 508 U.S. 83 (1993). *Cardinal Chemical* is based on the idea that infringement and validity are both ultimate issues in their own right, so that a finding of noninfringement did not moot a declaratory judgment action for invalidity. *Id*. at 99. A patentee whose patent claims are invalidated in one litigation may not reassert them in a new litigation merely because, in the earlier litigation, those same claims were also found not to be infringed. *See Mendenhall v. Barber-Greene Co*., 26 F.3d 1573, 1583 (Fed. Cir. 1994). This holding is a proper application of the principle behind the holding in *Cardinal Chemical*. I reject the alternative-ground argument to the extent that it relies on infringement and validity as alternative paths to the same ultimate conclusion.

### C. Application Beyond Standard 10BaseT Products

Even if collateral estoppel did apply, it would not apply to all of defendants' accused products. The issue in the *Cisco* litigation was whether the pairs of wires in a standard 10-Base-T Ethernet wire, selected by the Power Patch Panels to transmit power, were "data communication lines." The accused products there only sent data over wires 1, 2, 3, and 6, while only sending power over wires 4, 5, 7, and 8. The court in *Cisco* found that the latter pairs of wires were not "data communication lines" because they weren't actually used for sending data. *Cisco*, 318 F. Supp. 2d at 510-511. This view was adopted by the court in slightly modified form in this case. *See* Memorandum on Claim Construction (accompanying *Markman* Order), Case Nos. 01-74081, 06-13936, 06-13937, at 6 (data communication lines are "communication lines typically used for carrying data.") For defendants' standard products, which operate over a 10BaseT Ethernet line, the issues appear to be the same. For the reasons noted in the previous section, I do not believe collateral estoppel applies to those products, but this ruling is without prejudice to a motion for summary judgment on the merits of the infringement issue.

Defendants' Gigabit Ethernet products, by contrast, appear from defendants' own admission to send power over data communications lines when they are employed for gigabit rather than 10/100 use. Hearing Proceedings Before Special Master, Nov. 19, 2009, Tr. at 89:18-90:8. In gigabit Ethernet configuration, defendants' products send data over all eight wires. This means that, at least when being used in this mode, the same wires that are transferring power are also being used for transferring data. That use does not line up with the complete separation of data from power transmission in the accused Cisco products, and therefore would not fall under the protective umbrella of collateral estoppel, even should it apply.

Defendants argue that the distinction among different standard Ethernet configurations at least provides that their Gigabit Ethernet products sometimes behave as the Cisco products did, with complete separation of data from power, and that this therefore constitutes a substantial noninfringing use for purposes of contributory infringement. *Id.* at 90:13-17. Whether such use is substantial was not before the *Cisco* court, and therefore cannot be subject to estoppel.

8

Moreover, there is, to date, no adequate briefing to determine whether the substantiality of such use presents a genuine dispute as to a material fact. However, my recommendation that collateral estoppel does not reach the issue of indirect infringement by Gigabit Ethernet products is without prejudice to a motion for summary judgment on the merits of the indirect infringement issue itself.

Defendants' High Power products use all eight wires in the Ethernet cable for data communication, and therefore send power over data communication lines in the course of their normal operation. *Id*. at 92:14-93:8. It appears that they may be configurable to send data over only four wires with the use of an adapter. Defendants argue that this means these products likewise have a substantial noninfringing use and therefore cannot be relied upon to show contributory infringement. PowerDSine's Motion for Partial Summary Judgment of Noninfringement of Claim 16 of U.S. Patent No. 5,406,260 Based on the Doctrine of Collateral Estoppel at 18-19. But that is an issue that is likewise beyond the scope of collateral estoppel based on *Cisco*, and not adequately established for summary judgment at this time, for the same reasons as apply to the Gigabit Ethernet products discussed above. It should be reserved for briefing on the merits, if necessary.

### III. CONCLUSION

For the reasons discussed above, I recommend that defendants' motion for summary judgment of noninfringement of claims 16 and 17 based upon the doctrine of collateral estoppel be denied. That recommendation is without prejudice to a later motion for summary judgment of noninfringement of those claims on the merits.

__/s/_____

Professor Mark A. Lemley

Special Master

9

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, the foregoing was served on all counsel who have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5( d) and Local Rule CV -5( d), all others not deemed to have consented to electronic service will be served with a true and correct copy of the foregoing via email or U.S. mail.

Dated: December 15, 2009                                          Respectfully submitted:


                                                                  _____/s/_____

                                                                  Professor Mark A. Lemley
                                                                  Special Master